IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| HENRY FERST, : | |
| : | |
|    Plaintiff, : | |
| : | |
| v. : | Civil Action No. |
| : | 7:07-CV-78(HL) |
| CHARLES "NICK" NORTON, : | |
| in his official capacity as Sheriff : | |
| of Lanier County, Georgia, : | |
| : | |
|    Defendant. : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 15). For the following reasons, Defendant's Motion is granted.

**I.   BACKGROUND**

Plaintiff Henry Ferst, who is over 50 years of age, was employed as a Sheriff's Deputy in the Lanier County Sheriff's Office from October 7, 2004, until his termination on January 31, 2006. On the night of January 9, 2006, Plaintiff and a fellow officer executed a traffic stop which was recorded by the dashboard video camera in Plaintiff's patrol car. While the other officer searched the interior of the suspect's vehicle, the suspect somehow regained entry to the automobile and drove off. The officer, whose body was partially inside of the vehicle, was dragged a considerable distance by the suspect.

Defendant Sheriff Charles "Nick" Norton, after viewing the video of the incident, concluded that the suspect was able to enter the vehicle during the search because Plaintiff failed to follow proper procedure by not positioning himself between the suspect and the automobile. On January 29, 2006, Defendant notified Plaintiff he was terminated for placing "a fellow officer in harm's way." (Norton Aff. ¶ 10.) After firing Plaintiff, Defendant and the Lanier County Sheriff's Office hired a twenty-three-year-old officer, and the new officer received Plaintiff's badge number and patrol car.

Thereafter, on June 28, 2007, Plaintiff filed this civil action for employment discrimination under the Age Discrimination in Employment Act ("ADEA") against Defendant,[1] as well as a derivative claim for the recovery of attorney's fees. In the Complaint, Plaintiff contends Defendant referred to him as an "old man" and told others he was "too old" for the job, and Defendant fired him due to his age. (Compl. ¶ 13.) Furthermore, Plaintiff contends that, from the commencement of his employment until shortly before he was fired, Plaintiff ably performed the duties required of him as a Sheriff's Deputy. Plaintiff alleges he never received critiques or criticism from Defendant "for being unable to perform his duties" (Compl. ¶ 11.), and he "received commendation and promotion for his good work" from his previous

---

[1] Plaintiff also included in the original complaint Lanier County as a Defendant. On July 23, 2008, however, this Court dismissed all claims against Lanier County without prejudice after Plaintiff filed a Stipulation of Dismissal.

employers throughout his twenty-five-year law enforcement career. (Ferst Aff. ¶¶ 2-5.)  However, Defendant and other superiors in the Lanier County Sheriff's Office entered unfavorable performance reviews on behalf of Plaintiff.

Defendant subsequently filed this Motion for Summary Judgment, contending that (1) Plaintiff's ADEA claim fails because Defendant is not an "employer" under the language of the ADEA, and (2) Plaintiff's claim against Defendant is barred by Eleventh Amendment Immunity.[2]

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, (1986). When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable

---

[2]In his Motion for Summary Judgment, Defendant also claims no genuine issue of material fact exists with regard to Defendant's alleged reason for firing Plaintiff was pretext for unlawful age discrimination. However, this Court does not reach the merits of this claim, because the Motion for Summary Judgment is being decided on Defendant's grounds one and two.

to the nonmoving party. Id. at 254-55, 106 S. Ct. at 2513. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255, 106 S. Ct. at 2513; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26, 106 S. Ct. at 2553-54. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct at 2552.

**B.    Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution protects a State

from suit in the federal courts without the State's consent. "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens of or subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has held that the Eleventh Amendment applies to suits brought by a state's own citizens in addition to those brought by citizens of other states. Tenn. v. Lane, 541 U.S. 509, 517, 124 S. Ct. 1978, 1984 (2004); Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001). The Eleventh Amendment bars suits against an "arm of the state" as well as the state itself. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003); Robinson v. Ga. Dep't of Transp., 966 F.2d 637, 640 (11th Cir. 1992).

A State is immune from suit under the 11th Amendment unless (1) Congress has clearly and unequivocally abrogated the state's immunity pursuant to § 5 of the 14th Amendment or (2) the State has explicitly waived its sovereign immunity in its Constitution, statutes or decisions. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 3145 (1985), *superceded by statute on other grounds*, Title X § 1003, Pub. L. No. 99-506, 100 Stat, 1845; Lapides v. Bd. of Regents, 252 F.3d 1372, 1374 (11th Cir. 2001), *rev'd in part on other grounds*, 535 U.S. 613, 122 S. Ct. 1640 (2002). A State waives its 11th Amendment immunity only where "the most express language or . . . such overwhelming implication from the text . . . will leave no room for any other reasonable construction." Atascadero, 473 U.S. at 239-

40, 105 S. Ct. at 3146 (citing Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S. Ct. 458, 464 (1909)).  Waivers of Eleventh Amendment immunity may not be constructive.  College Sav. Bank v. Fla. Prepaid Postsecondary, 527 U.S. 666, 682, 199 S. Ct. 2219 (1999).

Although the ADEA expressly allows suits against state entities, the Supreme Court has held that it does not abrogate States' Eleventh Amendment immunity, as the ADEA is grounded in Congress' Article I commerce clause powers and not its powers to enforce the 14th Amendment.  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 82-84, 120 S. Ct. 631, 645-46 (2001).  Because Congress has not abrogated the States' Eleventh Amendment immunity in regards to the ADEA, one must look to a state constitutions and legislative actions in order to determine whether it has consented to ADEA suits.

> The Georgia Constitution states,
>
> The sovereign immunity of the state . . . can be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.  *No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.*

Ga. Const. Art. I, § II, ¶ IX (e)-(f) (1983) (emphasis added).  The Georgia Fair Employment Practices Act ("FEPA") provides a state cause of action for those discriminated against in public employment based on age, race, color, gender, religion or disability. O.C.G.A. § 45-19-21(a)(3) (2002).

6

This Court has held that the General Assembly's creation of a state cause of action for public employment discrimination through FEPA does not waive the State's Eleventh Amendment immunity in federal court, as the State of Georgia never expressly or impliedly intended to waive its immunity. Jackson v. Oconee Cmty. Serv. Bd., No. 5:06-CV-55 (WDO), 2006 WL 1652236, at *3-4 (M.D. Ga. June 8, 2006). In Jackson, a public employee plaintiff argued that FEPA's state cause of action for age discrimination suits waives the State's Eleventh Amendment immunity for ADEA suits. Id. at *2. The plaintiff cited a Georgia Court of Appeals case holding that because FEPA created a state cause of action for disability discrimination claims the State could not claim immunity in a Americans with Disabilities Act suit. Id. (citing Williamson v. Dep't of Human Res., 572 S.E.2d 678, 681-682, 258 Ga.App. 113, 116 (2003)).[3] The court noted in Jackson that because Article I, § II, ¶ IX of the Georgia Constitution "specifically reserves Eleventh Amendment immunity from suit in a federal court," FEPA cannot act as a waiver of the State's immunity from ADEA lawsuits. Id. at *3; see also Brewer v. Purvis, 816 F. Supp. 1560, 1569 (M.D. Ga. 1993) (noting that although Georgia consented to be sued in

---

[3] The court in Williamson specifically held that if a State, by legislative act, waives it sovereign immunity as to state discrimination claims by its employees, "the State may not selectively cloak itself in sovereign immunity as to federal discrimination claims by its employees." 572 S.E.2d at 681-82, 258 Ga.App. at 116. This "selective cloaking" by the State would discriminate against federally based rights which the Supremacy Clause of the Constitution of the United States forbids States to do. Id.

state courts through the purchase of state employee liability insurance policy, the State specifically reserved its Eleventh Amendment immunity in the express language of its State Constitution); Gary v. Ga. Dept. of Human Res., 323 F. Supp. 2d 1368 (M.D.Ga. 2004) (finding that Georgia did not waive immunity in ADA and Rehabilitation Act suit by accepting federal funds for the Department of Human Resources or implementing personnel policy subjecting employees to the provisions of the ADA).

Here, Plaintiff cites only to Williamson in arguing that Defendant is not protected by Eleventh Amendment immunity. Just as in Jackson, Plaintiff claims that FEPA's creation of a state cause of action for age-based employment discrimination waives the State's Eleventh Amendment immunity from ADEA claims. However, since the plain language of the Georgia Constitution specifically reserves the State's immunity from suits in federal court, a Georgia statute cannot be the basis for a waiver of immunity in a ADEA law suit. Ga. Const. Art. I, § II, ¶ IX (e)-(f). Plaintiff has failed to prove that the State of Georgia, through the creation of a state age discrimination cause of action, expressly or impliedly waived its Eleventh Amendment immunity. Assuming that Georgia did in fact waive its Eleventh Amendment Immunity, Plaintiff's suit is barred because Defendant does not fulfill the ADEA's definition of "employer."

**C.     "Employer" defined by the ADEA**

The purpose of the ADEA is to protect older workers against discrimination in the workplace. EEOC v. Chrysler Corp., 759 F.2d 1523, 1524 (11th Cir. 1985). Specifically, the portion of the statute that provides the substantive relief states, "It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 2008).

In order for the ADEA to apply, a defendant must be an "employer" within the definition of the statute; the defendant must have "20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year" of the alleged discrimination. 29 U.S.C.A. § 630(b) (West 2008). When determining whether an individual is an employee, courts must establish whether the employee and employer had an "employment relationship" on a particular day. Walters v. Metro Educ. Enter., Inc., 519 U.S. 202, 206-207, 117 S. Ct. 660, 663-64 (1997). In order to determine when a defendant falls within the statutory definition of "employer," courts utilize the "payroll method" in which the existence of a "employment relationship is most readily demonstrated by the individual's appearance on the payroll." Id. at 206, 117 S. Ct. at 663; McLeod v. City of Newton, 931 F. Supp. 817 (M.D. Ala. 1996).

Under the ADEA, "any person elected to public office in any State or political subdivision of any State" and persons chosen by those elected officials as "personal

staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office" are excluded from the definition of "employee." 29 U.S.C.A. § 630(f) (West 2008). Thus, the payroll method and the decision in Walters do "not stand for the proposition that all individuals paid by an entity, including elected officials, 'personal staff,' 'immediate advisors' and others expressly excluded from [the] definition of 'employee,' must nonetheless be counted for purposes of determining the number of 'employees' of an entity, simply because those individuals appear on the entity's payroll." Laurie v. Ala. Ct. of Crim. App., 256 F.3d 1266, 1268-69 (11th Cir. 2001).

Under the above principles, the Defendant is not an employer as defined by the ADEA, because he employed less than twenty individuals during the required time period and therefore is entitled to summary judgment. According to payroll records attached to his Motion for Summary Judgment, Defendant employed between eleven and eighteen persons from January 2005 through December 2006. (Bass Aff., Ex. A.) However, Plaintiff proffers the Affidavit of William Gilliard, a Lanier County Sheriff's Office investigator, in which Gilliard claims computer technician John Stone and animal control officer Robert Browning were employees and excluded from the list. (Gilliard Aff. ¶ 2, 5.)

Payroll records place the greatest number of individuals employed by the Lanier County Sheriff's Office over the current and preceding calendar years at eighteen. (Bass Aff., Ex. A.) Viewed in the light most favorable to Plaintiff, the

Lanier County Sheriffs Office would have employed *twenty or more* persons for only three weeks, if Mr. Stone and Mr. Browning are said to be employees. During the last two weeks of August 2006 and the first week of September 2006, the Lanier County Sheriff's Office employed a total of eighteen individuals. If two employees are added to the payroll for the entire current and preceding calendar years, the Defendant would have employed twenty persons for only three weeks.  The ADEA requires an "employer" to have "twenty or more employees for each working day in each of twenty of more calendar weeks in the current or preceding calendar year" in order for the Act to apply.  29 U.S.C. § 630(b).

     Furthermore, the Defendant himself may not be counted as an employee for purposes of determining whether he is an "employer," as Plaintiff contends. Under the ADEA, "any person elected to public office in any State or political subdivision of any State" and persons chosen by those elected officials as "personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office" are excluded from the definition of "employee."  29 U.S.C.A. § 630(f) (West 2008).  Thus, the payroll method and the decision in Walters do "not stand for the proposition that all individuals paid by an entity, including elected officials, 'personal staff,' 'immediate advisors' and others expressly excluded from [the] definition of 'employee,' must nonetheless be counted for purposes of determining the number of 'employees' of an entity, simply because those individuals appear on the entity's payroll."  Laurie

<u>v. Ala. Ct. of Crim. App.</u>, 256 F.3d 1266, 1268-69 (11th Cir. 2001).

Defendant is a "person elected to public office" within the meaning of 29 U.S.C. § 630(f), thus he is not considered an employee by the ADEA. Under the Constitution of the State of Georgia, a sheriff is an official "elected by the qualified voters" of the county. Ga. Const. art. IX, § I, ¶ III(a) (1983). Because Defendant did not employ twenty or more persons for twenty or more calendar weeks, Defendant is not an employer as defined by the ADEA.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

**SO ORDERED**, this the 30th day of March, 2009.

> *s/ Hugh Lawson*
> **HUGH LAWSON, Judge**

dab